ORIGINAL

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF GEORGIA

### ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 0 1 2011

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

| | |
|---|---|
| **BAHAEDDIN KHARAZMI**<br>**Plaintiff,** )<br> )<br> )<br>        **vs.** )<br> )<br>**BANK OF AMERICAN,N.A.,** )<br>**SUCCESSOR BY MERGER TO BAC** )<br>**HOME LOANS SERVICING, LP FKA** )<br>**COUNTRY WIDE HOME LOANS** )<br>**SERVICING, LP** )<br>**THE BANK OF NEW YORK TRUSTEE** )<br>**FOR CWABS ASSET-BACKED** )<br>**CERTIFICATES TRUST 2006-24,** )<br>**MCCURDY & CANDLER, LLC** )<br> )<br> )<br>_____**Defendants,**_____ | Case No.<br><br>**1:11-CV-2933**<br><br>**JURY DEMAND** |

## VERIFIED PETITION AND COMPLAINT

1. The Plaintiff, Bahaeddin Kharazmi, is an adult resident citizen of DeKalb County, Georgia over the age of nineteen years whose address is 4561 Olde Perimeter Way Unit # 1502 Atlanta, GA 30346.

2. The Defendant THE BANK OF NEW YORK TRUSTEE FOR CWABS ASSET-BACKED CERTIFICATES TRUST 2006-24 (Hereinafter "BNYT") is a foreign corporation doing business in Fulton County, Georgia and is the Trustee for a pool of securitized mortgages more particularly named as THE BANK OF NEW YORK TRUSTEE FOR CWABS ASSET-BACKED CERTIFICATES TRUST 2006-24 which is a special purpose vehicle or "SPV" in industry parlance, which purchases mortgages

and then sells securities backed by the income from the mortgages purchased. Address for service of process is registered agent for service of process is 1 Wall Street New York, NY 10005-2588.

3.  The Defendant BANK OF AMERICAN, N.A., Successor By Merger to BAC Home Loans Servicing, LP FKA Country Wide Home Loans Servicing, LP (Hereinafter "BOA ") is upon information and belief a mortgage originator who is in the business of making and selling mortgage loans and who is doing business in Fulton County, Georgia or was doing business therein during the times complained of herein. Lender for service of process is CT CORPORATION SYSTEM/SHAKINAH EDWARDS Office Address: 1201 Peachtree St NE ATLANTA GA 30361.

4.  The Defendant MCCURDY & CANDLER,LLC (hereinafter, "McCurdy & Candler,") is a law firm specializing in default service solutions and non-judicial foreclosure processing with its principal place of business being located in Atlanta, Georgia. Defendant McCurdy & Candler Connors has, at all times material hereto, effectively represented each party to the foreclosure process in the rush to unlawfully foreclosure sale of Plaintiff primary home.


## DIVERSITY JURISDICTION

5.  There is complete diversity in the action.

6.  The amount in controversy exceeds the statutory requirement.

## VENUE

7.  Plaintiff resides in the County of Fulton, State of Georgia.

8.  Venue is proper in the Atlanta Division.

## STATEMENT OF FACTS

9. The defendant BOA contacted the plaintiff through its counsel sometime on or about July 27, 2011 and notified the plaintiff that BOA intended to foreclose on the plaintiff's home.

10. The subject loan of the plaintiff was on a property located at 4561 Olde Perimeter way, Atlanta GA 30346 and the amount claimed to be due and owing on the loan was, at the time of the letter referenced in paragraph 9, loan amount 271,612.00

11. Upon information and belief the type of loan sold to the plaintiffs by the defendant Lender was a thirty year fixed rate mortgage, with a 1.075 yield spread premium, and was based on the borrower plaintiff's "stated" income and "stated" assets.

12. This particular type of loan is well known to the public conscious as being one of the main types of loans which are vulnerable to fraud and as a result, triggered a wave of foreclosures and defaults beginning in 2007 and continuing to the present day.

13. This loan type is generally associated with the practice of predatory lending wherein a lender makes a loan that is unaffordable to the borrower for the purpose of harvesting fees and charges knowing full well at the time of making the loan that the borrower cannot fulfill the loan obligations encompassed by this loan type.

14. In the present case Lender knew, at the time of making the loan, that the loan was unaffordable when made.

15. At the time of origination, the subject loan was sold into the secondary market.

16. The ultimate goal of the secondary market is to bundle loans together in investment pools through a process called "securitization".

17. In the present case the defendants contend that this particular mortgage was sold to an entity (which is a defendant in this action) that is called THE BANK OF NEW YORK Trustee for CWABS Asset-Backed Certificates Trust 2006-24

18. A securitization vehicle is called a Special Purpose Vehicle or SPV or sometimes a Special Investment Vehicle or SIV.

19. These entities are usually formed as either New York or Delaware corporate trusts.

20. These entities are created by the execution of a Pooling and Servicing Agreement or PSA which creates the entity and gives it all of its legal rights, powers and authority under the law of the jurisdiction in which it is formed.

21. In the present case, this defendant Trust was formed on December 1, 2006 and is governed according to the laws of the State of New York (See PSA section 10.03).

22. The Defendant Lender contends that it is and was the owner of this mortgage, and did not give Plaintiff any indication of, and did not identify, the Trust as the creditor in any of its communications or notices to Plaintiff.

23. The Plaintiff contends that BOA was not a party to the Trust, and is therefore cannot be the "holder" or 'holder in due course of the underlying promissory note of the Plaintiff's debt, and cannot therefore be the lawful assignee of the underlying mortgage.

24. The Plaintiff contends that neither Defendant BOA nor the Defendant Trust are the owner of this mortgage and both lack the standing to foreclose and that before either party may deprive the plaintiff of his home, they should be required to prove that they are in fact the owners of the plaintiff's mortgage note and that they have the present right to foreclose.

25. The Plaintiff alleges that the defendant BOA is engaged in and has engaged in a pattern and practice of falsifying loan transactions and in particular assignments of mortgages for the purpose of enabling its joint venturers to foreclose on property of unsuspecting or unknowing consumers illegally and without legal standing to foreclose.

26. In the Assignment of Security Deed attached hereto as Exhibit "A", the Trust is listed as the holder and owner of the Note and the beneficiary of Security Deed. However, the Note and Deed of Trust executed by Plaintiff identify the mortgagee and note holder as the original lending institution- Countrywide Home Loans, Inc.

27. Plaintiff further alleges that no documents or records have been filled with the Georgia County Recorder's Office, or provided to Plaintiff, which demonstrate that, prior to the Closing Date of the Trust, the Note was duly endorsed, transferred and delivered to the Trust as required by the PSA. Plaintiff further alleges that in the for the Trust to have had a valid and enforceable security interest against the subject Property, the Trust must prove that it received an endorsement of the Note prior to the Closing Date of the Trust and that it had physical possession of the Note at the time of the of attempting to foreclosure. Absent such proof, Plaintiff alleges that the Trust did not have standing to move forward with the foreclosure sale on the Subject Property.

28. Pursuant to Section 2.01 (b)(A) of the PSA, prior to the Closing Data of December 29, 2006, the Depositor agreed to deliver to the Custodian on behalf of the Trustee all of the Notes, endorsed in blank, without recourse "without recourse" with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right,

title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note)....."

29. Plaintiff if informed and believes and thereon alleges that the Note in this case was never actually transferred and delivered by Bank One, NA to the Depositor and by the Depositor to the Custodian on behalf of the Trustee for the Trust pursuant to the requirements of Section 2.01 of the PSA was not listed in any of the documents filed by the Trust and available to the public at www.edgar.gov. Accordingly, Plaintiff alleges that the Note in this case was never lawfully negotiated and physically delivered to the Trust.

30. Additionally, the Section 2.01(b)(C) of the PSA provides that, prior to the Closing Date of December 29, 2006, "[t]he Depositor has delivered or caused to be delivered to the Custodian, on behalf of the Trustee, for the benefit of the Certificateholders and the Certificate Insurer, the following documents or instruments with respect to each Mortgage Loan that is not a Cooperative Mortgage Loan so assigned....(C) a duly executed assignment of the Mortgage (which may be included in a blanket assignment or assignments), endorsed in the following form: Bank One National Association, in trust for THE BANK OF NEW YORK Trustee for CWABS Asset-Backed Certificates Trust 2006-24 for the benefit of the Holders of the Mortgage Pass-Through Certificates, Series 2006-24" together with, except as provided below, all interim recorded assignments of such mortgage (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates)...."

31. Section 2.03 of the PSA also provides that: 'As promptly as practicable subsequent to such transfer and assignment, set forth in clause (a) above and in any event, within ninety

(90) days thereafter, the Custodian shall affix the Trustee's name to each assignment of the Mortgage, as the assignee thereof, and, subject to Section 2.01, the Servicer shall enforce the obligations of the related Servicer pursuant to the related Servicing Agreement to (i) cause such assignment to be in proper form for recording in the appropriate public office for real property records and (ii) cause to be delivered for recording in the appropriate public office for real property records the assignments of Mortgages to the Trustee.... except that the related Servicer need not cause to be recorded any assignment which relates to a Mortgage Loan (a) in any state where, in an Opinion of Counsel addressed to the Trustee, such recording is not required to protect the Trustee's interests in the Mortgage Loan against the claim of any subsequent transferee or any successor to or creditor of the Depositor or the Transferor,(b) in any state where recordation is not required by either Rating Agency to obtain the initial ratings on Certificates set forth in the Prospectus Supplement or (c) with respect to any Mortgage which has been recorded in the name of MERS, or its designee."

32. Plaintiff alleges that none of the exceptions apply to Plaintiff's Loan. Accordingly, the PSA required the Assignment of the Security Deed to be recorded within ninety (90) days of the assignment of the loan to the Trust which had to occur by December 29, 2006. Based upon information and belief, the Assignment of the Security Deed did not occur by December 29, 2006 or ninety (90) days thereafter, but rather on Jan 24 2011 long after the Trust had closed. Said Assignment was ineffective as the Trust could not have accepted the Security Deed after the Closing Date pursuant to the PSA and the requirements for a REMIC Trust. If the assignment was made after the closing date, the

non-compliance with the REMIC statutes would terminate the trust by extinguishing its tax exempt status under the REMIC statutes.

33. Therefore, Plaintiff alleges upon information and belief, that the Trust did not hold any interest in Plaintiff's Loan and, therefore, did not have standing to move forward with the foreclosure sale on Subject Property. The fact BOA is acting as beneficiary of the Security Deed long after the Closing Date of the Trust on December 29, 2006, clearly establishes that Plaintiff's loan was never transferred to the Trust. If it was transferred, pursuant to the PSA, the Trust would have become the beneficiary and owner of the Note and Security Deed on December 29, 2006, or at the very latest, ninety (90) days thereafter. Therefore, the attempting foreclosure sale should be voided simple because none all the above Defendants hold a legal or equitable interest in the subject Property.

34. Further, the plaintiff invokes paragraph 22 of the mortgage which provides the plaintiff with the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

35. The plaintiff alleges that his action is in the nature of a counterclaim and set off to the underlying foreclosure action and that as such the plaintiff has the right to bring all of his claims including the right to bring claims in the nature of a counterclaim that would otherwise be time-barred including claims related to the predatory lending practices of Lender and its ultimate assignee BOA.

36. The plaintiff alleges that these defendants made a predatory loan to them which was unaffordable when made, and which provided no net benefit to them.

37. The plaintiff alleges that the defendants knew or should have known at the time of the origination of the loan that the product which they sold to the plaintiff was not suitable for his needs and would result ultimately in a default on his loan.

38. These defendants engaged in a pattern and practice of steering consumers to loans which featured prepayment penalties and adjustable rates such that these defendants could harvest fees and charges and extract the most possible profit from a borrower at the time of closing the loan.

39. These defendants made a loan to the plaintiff that was unsuitable for his financial and personal situation and which these defendants knew would result in a default.

40. These defendants made this loan for the purpose of equity stripping and fee harvesting and have engaged in a pattern and practice of this behavior.

41. These defendants are engaged in a pattern and practice of predatory lending wherein unsuspecting consumers are sold unaffordable products which provide no net benefit to them and set them up for financial ruin by continuing the yield spread premium.

42. The plaintiff in this case was the victim of these predatory lending practices and his default on this loan was the foreseeable result of the lending practices of these defendants.

43. The plaintiff contends that all of the wrongful conduct on the part of the defendants complained of herein is either intentional, negligent or wanton depending upon evidence adduced at trial and that the Plaintiff's claims against the defendants should serve as a set off or be treated as a counterclaim as against any sums owed to any defendant (assuming that any defendant has standing to foreclose).

44. The plaintiff contends that the defendant BOA attempting to foreclose should be set aside until such time as the plaintiff claims are heard and they offset or diminish to some degree any claims that the defendants have on the note.

45. The plaintiff contends that the foreclosure is an equitable remedy at law in Georgia and a party seeking to foreclose must do so with clean hands or they may be equitably estopped from foreclosing under Georgia law.

46. The plaintiff claims all damages allowable under law for the injuries that have been sustained.

47. The defendants are engaged in a joint venture as defined by Georgia law and as such are liable jointly and severally for the actions of all members of the joint venture.

48. As a result of the actions of the defendants the plaintiff has been injured and harmed in that he has suffered financial loss, damage to his reputation and has also suffered mental anguish worrying about the status of his home and the possibility of becoming homeless.

## AFFIRMATIVE DEFENSES

## TO THE WRONGFUL FORECLOSURE ACTION

49. The plaintiff alleges that acceleration was improper and in violation of the parties contract.

50. The plaintiff alleges that the defendant failed to put plaintiff into a modification agreement which would have cured any alleged default and would have been an absolute defense to foreclose.

51. The plaintiff alleges that the defendant failed to comply with applicable mortgage servicing regulations, guidelines and agreements and as such a condition precedent to acceleration and foreclose has been violated requiring the set aside of the underlying foreclosure action.

52. The plaintiff alleges that the servicer of the loan failed to offer pre-foreclosure loss mitigation as required by the agreements between the trustee and the servicer. This document is called a Pooling and Servicing Agreement or a PSA, in industry parlance, which requires that the servicer take certain actions to prevent foreclosure before acceleration of the loan and foreclosure. This failure requires that the foreclosure be set aside and enjoined until such time as the servicer complies with these requirements.

53. The plaintiff alleges that the defendants are equitably estopped and enjoined from foreclosing because they have unclean hands, by virtue of their actions in the origination and servicing of the loan that underlies this case.

54. The plaintiff alleges that BOA has standing to initiate a foreclosure action against his property. As grounds therefore, the plaintiff is willing to provide at an evidentiary hearing, proof of said lack of standing to foreclose.

55. The plaintiff alleges that the assignments between the parties to the Trust, as required by the PSA are non-existent and therefore the assignment by Lender to BOA is void, voidable, illegal, without legal effect and otherwise invalid and unenforceable as a matter of law.

## COUNT ONE

## WRONGFUL FORECLOSURE

56. The plaintiff realleges all prior paragraphs as if set out here in full.

57. The defendant BOA is willing to conduct a foreclosure proceeding against the plaintiff on Sept 6, 2011, in violation of law.

58. The initiation of the foreclosure proceeding by the defendant BOA, as condoned by all other defendants, was negligent, wanton or intentional, depending on proof adduced at trial.

59. As a result thereof, the defendants are liable for all natural, proximate and consequential damages due to their actions including an award of punitive damages upon a proper evidentiary showing.

## COUNT TWO

## SUPPRESSION

60. The plaintiff realleges all prior paragraphs as if set out here in full.

61. At the aforesaid time and place, the defendant Lender., by and through its agents and brokers, failed to disclose to the plaintiff all of the following material facts:

a. That the loan product he was being sold was not the only loan product that he qualified to receive.

b. That the loan product that he was being sold was the loan product that the defendant wanted him to have due to its own financial considerations.

c. That the loan product that he was being sold was a high cost and predatory loan product with an undisclosed account of a yield spread premium feature, which would toll the Plaintiff over the lifetime of the mortgage, and a prepayment penalty.

d. That the plaintiff would qualify for a lower cost loan.

e. That the plaintiff would qualify for a lower fixed rate loan.

f. That there were other options available to the plaintiff for his home mortgage needs that this defendant provided.

g. That the defendant was steering the plaintiff to a loan of the defendant's choosing due to the defendant's financial considerations.

h. That the defendant had not considered whether this loan product was suitable for Plaintiff's needs.

i. That the defendant was not acting in the plaintiff's best interest but was acting first with respect to its own financial interests.

62. As a proximate result of the defendant's suppression, the plaintiff acted by accepting the loan to his detriment and as a result;

63. The plaintiff suffered injury and damage including emotional and financial injury as well as damage to his credit and reputation.

64. The actions of the defendant in this respect were intentional, malicious, gross, and planned and designed to inflict harm and injury upon unsuspecting consumers including the plaintiff.

65. The plaintiff claims all damages allowable under law for the injuries suffered.

## COUNT THREE

## VIOLATION OF THE GEORGIA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE OCGA 51-1-11

66. The plaintiff realleges all prior paragraphs as if set out here in full.

67. The plaintiff is a consumer as defined by Georgia Law.

68. The defendants are sellers, marketers, suppliers or retailers of mortgages which the FDIC defines as products.

69. The plaintiff alleges that the mortgage sold to him was defective in that the mortgage was unreasonably dangerous and defectively designed in that the mortgage in question is what is commonly known as a "NINA" no income no asset or stated income stated asset originated mortgage which includes a prepayment penalty which is, does or is likely to create a default on the plaintiff's mortgage.

70. The plaintiff received the mortgage without substantial change and that the product proximately caused the plaintiff financial, emotional and reputational injuries as a result of its defect.

71. The plaintiff claims all damages allowable under law for the injuries suffered.

## COUNT FOUR

### BREACH OF CONTRACT

72. The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

73. The plaintiff and the defendants are parties to a contract for a mortgage on the third party plaintiff's property.

74. The subject loan has been "securitized" by the defendants.

75. The subject mortgage, once securitized, became subject to a contract between the Trustee of the special purpose entity (or trust) and its successors and assigns. This Contract is commonly referred to as a "Pooling and Servicing Agreement" (hereinafter "PSA").

76. Under the provisions of the PSA, the servicer is required to actively engage in "loss mitigation" under their agreement with the Trust to prevent the foreclosure of the property and to provide for income to the trust in the form of payments by the plaintiff on the mortgage.

77. The plaintiff in this case is an intended Third Party Beneficiary of the PSA.

78. The actions and conduct of the defendants in applying to the mortgage illegal, unauthorized charges, creating a false default and foreclosing on the property of the plaintiff is a breach of the mortgage or note and of the PSA of which the plaintiff is a third party beneficiary.

79. As a result thereof, the defendants are liable for all natural, proximate and consequential damages of their breach of contract.

## COUNT FIVE

## NEGLIGENCE OR WANTONNESS PER SE

80. The plaintiff realleges all prior paragraphs as if set out here in full.

81. Each of the following actions of the defendants are instances of conduct previously banned as unfair and deceptive by federal regulatory authorities governing the actions of these defendants, which were engaged in by the defendants in this case:

a) Making a loan based on the value of the collateral.

b) Making a loan that the lender knew or should have known was unaffordable when made.

c) Making a loan without considering the borrower's ability to repay.

d) Making a loan without considering the borrowers sources of income.

e) Making a loan that was stated income, no documentation loan in addition to having other predatory characteristics such as a prepayment penalty and a high cost.

f) Making a loan designed to avoid the HOEPA triggers set out in the TILA.

g) Failing to properly oversee its agents, employees, vendors and associates who broker loans for them to prevent predatory lending practices by them.


82. As a result of violating these and / or other and additional federal regulations with respect to the making of this loan, they are liable to the plaintiff under the theories of negligence per se or wantonness per se depending upon evidenced adduced.

83. As a result of the negligence or wantonness per se the plaintiff claims all damages allowed by law.

## COUNT SIX

## CIVIL CONSPIRACY

84. The plaintiff realleges all prior paragraphs as if set out here in full.

85. The defendants engaged in an unlawful combination and conspiracy to originate, raise, and service a mortgage loan through a pattern and practice of predatory lending and to conceal this unlawful activity for the purpose of unjustly enriching the joint-venturers and conspirators.

86. As a result of this civil conspiracy, civil wrongs were committed against the plaintiff and other consumers. The motivation for the civil conspiracy was the defendants' greed for more profits.

87. The plaintiff claims all damages allowable under law for these wrongs.

## COUNT SEVEN

### RESPONDEAT SUPERIOR

88. The plaintiff realleges all prior paragraphs as if set out here in full.

89. Because BOA acted as agents for BNYT, the trust and trustees incur respondent superior liability for the activities of BOA in originating and servicing the plaintiff's mortgage loan.

90. BNYT had the right to select and control the originator of this loan as well as the servicer and by choosing as their agent a party that engaged in predatory lending practices in originating the loan, and further negligently serviced the loan; the plaintiff was caused to suffer injury and damages.

91. As a result the plaintiff claims all damages allowable under the law.

## COUNT EIGHT

### NEGLIGENT HIRING, TRAINING AND SUPERVISION

92. The plaintiff realleges all prior paragraphs as if set out here in full.

93. The defendant BNYT had a duty to train and supervise its agents and implement sufficient controls so as to safeguard the well-being of its customers. The defendants breached its duties to properly train and/or supervise its personnel and breached its duty to implement sufficient controls such that the plaintiff received a faulty mortgage product and faulty mortgage servicing.

94. Given the inadequate controls and reckless indifference to its customers, the defendant's conduct is malicious and as a direct and proximate result, the plaintiff has been injured and damaged.

95. As a result, the defendants are liable for all natural, proximate and consequential damages of their negligent training, hiring and supervision.

## COUNT NINE

## JOINT VENTURER LIABILITY

As a result the third party plaintiffs claim

96. Plaintiff realleges all prior paragraphs as if set out here in full.

97. The defendants are part of a joint venture as defined by controlling law.

98. As a member of a joint venture the defendants are jointly and severally liable to the plaintiff for any and all wrongful conduct on the part of any member of the joint venture.

99. The aforesaid wrongful acts complained of in this pleading are adopted as if alleged herein and set out in full.

100. As a result of these actions by the defendants, the plaintiff has been injured and damaged as set out above.

101. The plaintiff claims all damages allowable by law for the wrongful acts of the joint venturers.

## COUNT THIRTEEN

## PETITION FOR PETITION FOR INJUNVTIVE RELIEF

102. The plaintiff adopts and realleges all prior paragraphs of this pleading as if set out here in full.

103. A Temporary Restraining Order is an equitable remedy that the Superior Court has the power and authority to grant.

104. The purpose of a Temporary Restraining Order (hereinafter TRO) is to preserve the status quo ante until a final determination has been made on the merits.

105. A TRO may be granted without notice if it clearly appears from specific facts shown by a verified pleading or affidavit that immediate and irreparable harm will result before the adverse party or his attorney can be heard if opposition is notified.

106. In the present case, the BOA has instituted a Foreclosure sale action against the plaintiff's home occurred on Sept 6, 2011.

107. Unless a TRO is entered in the present case, the plaintiff will be deprived of his property without the Superior Court having an opportunity to review or rule upon the substantive allegations of the complaint.

108. The Petitioner alleges that immediate and irreparable harm will result if the defendant is allowed to complete the foreclosure.

109. The Petitioner avers that the legal remedy available is inadequate to prevent the foreclosure without the intervention of the Court.

110. The Petitioner avers that a property right exists in his home.

111. The Petitioner avers that there is no default on the home other than a false or bogus default created by defendant BOA.

112. The Petitioner avers that the foreclosing entity lacked standing to foreclose on the Plaintiff's home without being relieved of his contractual obligation on the debt.

113. The Petitioner shows unto the Court that enforcement is feasible as the Court has jurisdiction of this matter and has in personam jurisdiction over the parties.

114. The Petitioner further alleges that the hardships are balanced in this matter and that the Defendant has no meritorious defense to the best of the Petitioner's knowledge and belief. Further, the defendant is protected equitably in that the home in question is occupied and the home is maintained and not suffering waste or neglect.

115. The Petitioner prays that this Court will issue an ex parte TRO until such time as this Court may take up this matter. The Petitioner further prays that this Court would grant the relief requested and issue a Temporary Restraining Order to stop the attempting foreclosure sale from being conducted until such time as the bona fides of the plaintiff's complaint can be heard before the Court after the taking of evidence.

**WHEREFORE,** the Plaintiff having set forth his claims for relief against the Defendant respectfully prays of the Court as follows:

A. That the Attempting foreclosure, set aside and permanently enjoined.

B. That the Plaintiff have and recover against the Defendant a sum to be determined by a jury of his peers in the form of actual damages;

C.  That the Plaintiff have and recover against the Defendant a sum to be determined by a jury of his peers in the form of punitive damages;

D. That the Defendant be enjoined from continuing with its foreclosure sale until such time as the material averments of the Plaintiff's complaint have been heard.

E. That the Plaintiff has such other and further relief as the Court may deem just and proper.

Submitted this _____ day of September, 2011

Bahaeddin Kharazmi Pro Se,
A.R.R
4561 Olde Perimeter way
Atlanta GA 30346

## AFFIDAVIT OF TRUTH OF STATEMENTS

I, Bahaeddin Kharazmi, am over 18 years of age and competent, do hereby affirm that I have personal knowledge of all the facts, in the **PLAINTIFF'S COMPLAINT TO STOP A ATTEMPTING WRONGFUL FORECLOSURE SALES,** including all allegations, statements contained herein and related documents are true to the best of my knowledge and beliefs pursuant to OCGA 9-10-111 and under penalty of perjury.

Date _1ˢᵗ_ day of SEPTEMBER, 2011

STATE OF GEORGIA          )

                          )          ACKNOWLEDGEMENT

FULTON COUNTY             )

BEFORE ME, the undersigned, a Notary Public, personally appeared the Petitioner, who being by me first duly sworn, subscribed to the foregoing Petition, and acknowledged before me that being duly informed of the contents of the Petition, he executed the same voluntarily.

A WITNESS my hand and official seal of office, this the _1ˢᵗ_ day of SEPTEMBER, 2011.

_____          _____
BAHAEDDIN KHARAZIM                         NOTARY PUBLIC

                                          My Commission Expires:  05/13/2012



## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a struck jury for the trial of this case.